DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MARIA CAMPANA,

Appellant,

v.

MICHAEL TRABOLD,

Appellee.

No. 2D2024-0216

_____

December 18, 2024

Appeal from the Circuit Court for Hillsborough County; Nancy L. Jacobs, Judge.

Mark G. Rodriguez of Mark G. Rodriguez, P.A., Tampa, for Appellant.

Allison M. Perry of Florida Appeals, P.A., Tampa, for Appellee.

SLEET, Chief Judge.

Maria Campana (the Mother) challenges the trial court's nonfinal order entering a no contact order between the Mother and Michael Trabold (the Father). On appeal, the Mother argues that the trial court erred by entering the no contact order and effectively awarding exclusive use and possession of the parties' jointly owned home to the Father when

there was no pleading or motion that requested such relief.  Because the trial court improperly awarded relief that neither party pled, we reverse.

## I.     BACKGROUND

The Mother and Father, though unmarried, jointly own a home in Hillsborough County where they lived with their two minor children.  On September 3, 2023, following a domestic violence incident,[1] the Mother unilaterally moved with the children to Ohio.

On October 3, 2024, the Father filed a verified petition to establish paternity, timesharing, and other relief as well as another motion for timesharing and a pickup order to return the children to Florida.  The Mother filed a counterpetition to determine paternity, timesharing, and child support.  None of the pleadings mentioned a no contact order or a request for exclusive use and possession of the parties' jointly owned home.

During opening statements at the hearing, the Father for the first time indicated that he would stipulate to a no contact order, even though such relief was not included in any of his pleadings.  Then during the Mother's testimony, she was asked if she had a "desire" to live in the joint home again, and she indicated "no."  After the parties' testimony, the Father stated that he was seeking to remain in the home and repeated that he would agree to a no contact order.  Without discussing the terms of the potential no contact order, the trial court asked the Mother if she had any objections and stated, "I can't imagine that there would be any objection to a no contact order; is that correct?"  The Mother responded

---

[1] The Mother testified extensively as to her allegations of domestic violence against the Father that left her "afraid for [her] life and [the] safety of [her] and [her] children."

with a qualified agreement stating, "[W]ithout any limitation to other remedies correct."

The trial court then heard closing arguments from both sides during which the Father made clear that he sought the return of the children to Florida and fifty-fifty week-on, week-off timesharing. He also sought to remain in the joint home, citing the Mother's prior testimony that she had no desire to live there, and repeated that he agreed to a no contact order. The Mother on the other hand argued that the court was without jurisdiction to enter a return order because the parties were never married and paternity was not established under the relevant statute. She further argued that as the natural mother, she had primary care, custody, and control of the children. However, the trial court determined that paternity had been established, ordered that the children be returned, and then began to discuss timesharing.

When the Mother expressed concerns over her living situation without employment in Florida, the trial court explained that it was ordering that the children be returned to Florida but that it was not forcing her to return and that because she previously said that she did not want to live in the jointly owned house, she did not have to. She immediately responded:

> If my children are being forced to move back to Florida, I am going to live with my children. I am not going to leave them. I will not live separately from them. I would like to live in my home with my children if my children are going to have to move back to Florida.

Thus, despite her initial testimony to the contrary, once she heard that the children were required to return to Florida, she unequivocally expressed her desire to live in her home with her children. She explained that she did not have anyone in Hillsborough County with whom she could temporarily stay and asked if the court was awarding the Father

3

sole use and possession of the home without it being sought in the pleadings. The trial court explained that it was not awarding the home to either party but then pointed to the Mother's initial testimony that she did not desire to live in the house—ignoring her most recent statement to the contrary—to then say that the Father could live there if he so chose.

Thereafter, while discussing the exchange of the children, the trial court pointed out that the parties agreed to a no contact order so they could not directly exchange the children. The Mother expressed that such would be unworkable because there would be an issue if she wanted to go into the home while the Father was there. The trial court again pointed to the Mother's testimony that she did not wish to live there and stated that "she can get her own place set up." The parties continued to discuss the timesharing logistics, and toward the end of the hearing, the trial court again expressed that it was not awarding the house, again pointed to the Mother's testimony, and again said that the Father could live there. When the Mother asked for clarification on whether she could go into the home if she wanted to, the trial court responded:

> No. She said she doesn't want to live there. Why would she want to go in the home? I mean, I'm saying there's a no contact order. So why would she -- let's not stir the pot. Why does she want to go into the home if potentially he's living in the home and she's accusing him of domestic violence against her? Why even cause -- why even do that?

The court continued to question why she would want to enter the home and concluded by stating: "I'm not making an award of [the home], and she shouldn't just be going in there just for the heck of it, no. Because she's indifferent and doesn't want to go live there, then there's no reason for her to go there."

4

A few weeks later, the trial court entered the order on appeal which required shared parental responsibility with the parents exercising week-on, week-off timesharing. The order also included a "Joint Stipulated No Contact Order" provision requiring among other things that neither party "[g]o to or within 500 feet of where the other [p]arty lives." And regarding the joint home, the trial court determined that it was in the best interests of the children to stay at the home. It once again noted the Mother's testimony that she did not want to stay in the home and stated that it was "not entering an order as to what parent can stay in the house but caution[ed] the Mother on returning to the home that she said she didn't want to live in."

The Mother filed a motion for reconsideration, arguing that the Father's motion did not seek exclusive use and possession of the home or a no contact order. *Cf. Hayes v. Norman Harris Servs., Inc.*, 198 So. 3d 716, 718 (Fla. 2d DCA 2016) ("While counsel for the Hayes could have done a better job of informing the court that a separate homestead objection remained, counsel clearly did so in a timely motion for rehearing."). The trial court did not rule on the motion.

## II.    ANALYSIS

On appeal, the Mother argues that the trial court erred by entering the no contact order and effectively awarding exclusive use and possession of the parties' jointly owned home to the Father when there was no pleading or motion that requested such relief. We agree.

As an initial matter, we note that even though the trial court's order stated that it was not entering an order as to which parent could stay in the house, the order nonetheless has the effect of awarding exclusive use and sole possession to the Father. In particular, the order "caution[ed] the Mother on returning to the home that she said she didn't

5

want to live in." This was despite the fact that the Mother unequivocally stated that she wanted to live in the home with the children. Additionally, the no contact order requires that neither party "[g]o to or within 500 feet of where the other [p]arty lives." And as the Father testified, he lives in the joint home. Thus, without a provision allowing the Mother to enter, the no contact order prevents her from doing so. Furthermore, during the hearing, when the Mother sought clarification as to whether she could go into the home with the no contact order in place, the trial court explicitly answered "no." Therefore, we conclude that despite the court's statement to the contrary, it effectively awarded the Father exclusive use and possession of the home by entering the no contact order.

"It is well settled that an order adjudicating issues not presented by the pleadings, noticed to the parties, or litigated below denies fundamental due process." *Neumann v. Neumann*, 857 So. 2d 372, 373 (Fla. 1st DCA 2003). Consequently, courts are without authority to award relief not requested by the pleadings and motions of the parties. *Daniels v. Sorriso Dental Studio, LLC*, 164 So. 3d 778, 782 (Fla. 2d DCA 2015) (citing *Worthington v. Worthington*, 123 So. 3d 1189, 1190-91 (Fla. 2d DCA 2013)); *see also Eadie v. Gillis*, 363 So. 3d 1115, 1117 (Fla. 5th DCA 2023) ("[A] court violates due process when it awards a remedy that a party did not seek."). Here, the record is clear and the Father does not dispute that neither his petition nor his motion requested the no contact order or exclusive use and possession of the jointly owned home. Instead, the Father argues that the issue was tried by consent.

"An issue is tried by consent where the parties fail to object to the introduction of evidence on the issue." *Eadie*, 363 So. 3d at 1118 (quoting *Dep't of Revenue v. Vanjaria Enters., Inc.*, 675 So. 2d 252, 254

6

(Fla. 5th DCA 1996)). In determining whether an issue was tried by consent, we consider (1) "whether there was 'a fair opportunity to defend' the issue" and (2) "whether the defending party 'could have offered additional evidence' if the issue had been included in the operative pleading or motion." *Id.* (quoting *Anchor Prop. & Cas. Ins. v. Trif*, 322 So. 3d 663, 670 (Fla. 4th DCA 2021)).

The Father specifically argues that after he announced during opening statements that he would agree to the entry of a no contact order, the Mother had the entire proceeding to argue against such an order and yet when the court asked if she objected to a no contact order, she did not do so. His argument here fails for two reasons. First, although the Father may have mentioned the no contact order during opening statements, there was no issue to defend at that point. The purpose of the hearing was to determine whether the children were to be returned and to set up a timesharing schedule if so. The Mother's stance from the beginning of the hearing was that the children should remain with her in Ohio. Thus, the Father's mention at the beginning of the hearing that he would agree to a no contact order did not present an issue where the Mother was proceeding as if she would remain in Ohio with the children. This is especially so because the terms of such an order were never raised or discussed. Notably, at the same time the Father first mentioned the no contact order, he also noted that he would be agreeable to the Mother returning to Florida with the children and staying in the jointly owned home. Thus, at the beginning of the hearing, there was no reason for the Mother to believe that a no contact order, which ostensibly would be put in place to protect her as the domestic violence victim, would ultimately have the effect of keeping her out of her own home. Therefore, at that point, there was no issue to defend. In

7

fact, for purposes of trial by consent, the issue did not arise until the end of the hearing when it became clear that the no contact order would have the effect of awarding the Father exclusive use and possession of the parties' jointly owned home. And at that point, it is clear that the Mother did not have a fair opportunity to defend the issue.

Second, the Father's argument fails because, despite his claim that the Mother failed to object to the no contact order, the record is clear that once she became aware of the effect of the no contact order, and therefore the issue, she did in fact object. To be clear, despite the trial court's repeated reliance on the Mother's initial testimony to conclude that she did not wish to live in the jointly owned home, when the trial court ruled that the children were to be returned, the Mother responded:

> If my children are being forced to move back to Florida, I am going to live with my children. I am not going to leave them. I will not live separately from them. I would like to live in my home with my children if my children are to have to move back to Florida.

Thereafter, when the trial court pointed out that the parties agreed to a no contact order and that they could not directly exchange the children, the Mother expressed that such would be unworkable because there would be an issue if she wanted to go into the home and the Father was there. Thus, the Mother did not consent to the no contact order.

We conclude that the trial court erred in entering the no contact order where it was not included in the pleadings, was not noticed prior to the hearing, and was not tried by consent. Accordingly, we reverse and remand for further proceedings. *See Martin v. Lee*, 219 So. 3d 1024, 1025 (Fla. 1st DCA 2017) (reversing an order that granted the husband's ore tenus request for a no contact order during the hearing where he did not request the no contact order in the pleadings).

Reversed and remanded.

8

SMITH, J., Concurs.
ATKINSON, J., Dissents.

_____

Opinion subject to revision prior to official publication.